Oral argument not to exceed 15 minutes for each tenant, and then 5 minutes for the major's. Good morning. Good morning, your honors, and may it please the court. Judge Griffin, I respectfully request 2 minutes for rebuttal. Very well. Your honors, I represent the plaintiff appellant, Angelo Binno, who I'm proud to have in the courtroom today, in a case that is very much about basic fairness and equality of opportunity. Angelo Binno is a blind man who had his dreams of attending law school and engaging in the practice of law stifled by the conduct of the American Bar Association, who sanctions an examination, the law school admissions test, which illegally tests Mr. Binno on his inability to see rather than on his aptitude for the study of law. There is no doubt that we've sued the correct party, your honors. What shows that best is the fact that the American Bar Association was first to draw the causal connection between their conduct and the discrimination, not Mr. Binno. It was the American Bar Association's rules, up until 1997, for decades that recognized that it was universally understood as unacceptable to force an examination that asks a blind individual to draw a picture. Their rules, their accreditation standards, Standard 503, specifically exempted those who were physically incapable of taking the test. Counsel, could I ask you a question? Your cause of action here arises, as I understand it, under Section 309 of the Americans with Disabilities Act, correct? Yes, Your Honor. The problem I have here is the way that statutory tort reads is any person that offers examination or courses related to applications, licensing, and so on. The problem I'm having here is the word offers, and the group that was offering the test or constructing the test is the LSAT council. So why did you not sue them, the group that actually formulated the test, conducted the test, because the ABA did not, quote, offer the test in the normal sense of the word offer? So why not sue the people who did offer the test? Your Honor, I appreciate the question because it's an important point. Mr. Binno sued the American Bar Association because they caused his injury. His injury wasn't his inability to get accommodations on the law school admissions test. This is the cause of action. We're confined or you're confined because you're suing under a federal statute, and we are required to apply that statute, not some general common law tort concept of everybody who may have been some proximate cause of a claimed discrimination. It is a particular type of discrimination, apparently, in this statute that we are to enforce. That's my question. Yes, Your Honor, and I believe it's important to note that offer is an undefined term within the context of that remedial statute within Title III of the Americans with Disabilities Act, and it's not entirely clear from that statute that it should be interpreted as narrowly as the defendant suggested. The implementing regulations for Title III speak to a party who selects the examination. It says that an examination should be selected so as to accurately reflect the applicant's ability to do what the test purports to measure, not discriminatorily reflecting his disability. The ABA selects the LSAT. It's the only examination that they deem presumptively valid and reliable. Why not, if you want to sue the ABA fine, why not sue the people who constructed the test and administered the test as well? Is there a particular reason that you did not want to join them in the lawsuit? Well, the reason goes to standing, Your Honor. The Law School Admissions Council can grant accommodations, which we've led are inadequate in this case, but they're not in a position to offer redressability in the form of saying that it's unacceptable to have a blind person taking an examination. Well, excuse me, counsel, but they can redraft the test. They can take that whole first analysis section out. It seems to me that that's the direct route in. That's the part of it that he's complaining about. Am I correct? Your Honor, that's the part of the exam he's complaining about. The ABA can't rewrite that section. The LSAC can, however. Well, Your Honor, we don't know that because we haven't had a chance to engage in discovery. In noting that this examination is the only examination that is presumptively valid and reliable, we don't know the extent to the ABA's role in directing the contents of the examination. Perhaps it was the inclusion of these logic game questions that require drawing pictures that was pivotal. Did you all claim that the ABA had some role in constructing the test? We claim that the ABA's policies forced a discriminatory test. But you did not claim that they had any part of or any authority to draft parts of the test. Well, we claim that they offered the examination. I know. I'm asking you if you claim that they had anything to do with constructing the test. To answer your question, Your Honor, directly, what we claimed simply was that they exercised ultimate control as the governing body. So the answer is no? Correct, Your Honor. But, Your Honor, I would also like to... It doesn't hurt your position to go on and admit that the answer is no. Thank you, Your Honor. Your Honor, Title III, though, was not the only claim in this complaint. There's also a claim under Title V of the Americans with Disabilities Act which makes it illegal to interfere with a person exercising rights guaranteed to them under the act. Now, the defendant and the district court failed to analyze this claim in its opinion, and the defendant has misstated the law. A plaintiff, in order to sustain a cause of action for interference, and there can be no doubt that using your power to force discrimination, drawing pictures as interference, in order to sustain that claim, Mr. Bino does not have to succeed in an earlier claim under Title III against this particular defendant. If that was the case, Title V would be purely superfluous, and there's no indication in the statute that that's what Congress intended. It was intended to be a separate cause of action. Rather, to sustain a cause of action for Title V for interference, you need to only plead that the applicant was engaged in activities that were protected under the ADA. You have to allege that it was intended, that there was an animus to discriminate against the disabled? Well, it has to be plausibly drawn from the complaint, Your Honor. Is that alleged in the complaint? I believe it is. It's alleged that prior to 1997, the American Bar Association, through their own conduct, recognized the harsh discrimination of this examination. When you change your rule, knowing that the result of that change is going to force a person who is blind to draw a picture, that is discriminatory animus. They didn't stumble into interfering with Mr. Bino's rights to take a nondiscriminatory examination. They recognized themselves that the law school admissions test couldn't be accommodated in all instances. They recognized that there were a group of people who you could give them any set of accommodations. You could put Mr. Bino in a room for four years to take this examination. He's still not going to be able to draw a picture. So when the American Bar Association purposefully changes their rule and removes that safe harbor for a blind person, they do so purposely and knowingly, and knowing the discrimination that they're causing to Mr. Bino. All right. You have no direct evidence of a discriminatory animus, but you're saying the circumstances lead to an inference based upon the facts. Is that it? That it's plausibly inferred from the complaint, Your Honor. All right. I see your time's up. Any last point you want to make real quickly? Your Honor, what I would just like to make is that because this case is very much a case about standing, the ABA motivates the conduct of the law schools they regulate. They don't have accreditation authority from the U.S. Department of Education for no reason. They have it because they wield the authority to set the rules of the game. And they chose to set the rules of the game in a way that forced a blind person to show his worth by drawing a picture. I respectfully reserve some time for rebuttal. All right. The Michigan Attorney General has got five minutes to it. That's my understanding. Okay. Good morning. Good morning, Your Honors. May it please the Court. Assistant Solicitor General Anne Sherman here on behalf of amicus, Michigan Attorney General Bill Schuette in support of Angelo Bino. I'll make two brief points about one addressing the issue of offer and two brief points on the standing issue. The Attorney General urges this Court to allow this case to go forward into discovery. On the offer point that Judge Merritt asked about, because this is a remedial statute, the language of Title III should be read broadly. And it's also important to look at the implementing regulations that counsel that preceded me talked about, the use of the word, the examination is selected and administered. The DOJ recognized that it wasn't just the administration, the physical place of the exam, or even the time it was given, but it was the actual selection of the examination itself. And I would direct this Court also to. The ABA didn't select the test, did it, or have anything to do with its construction. It required their, as I understand it, it may be an error, it required that there be some kind of test or it recommended that there be some kind of test in order for the law school to be acceptable under ABA standards. But they didn't have anything to do with how the test was constructed or how it was administered. So normally when you say someone offers a test, you think they had something to do with the construction of it or monitoring of it or something. That's the problem. Respectfully, Your Honor, I do disagree with your proposition because, first of all, I don't think we look at offer in the normal sense of the word. I think we look at it in a broad sense based on the remedial nature of the statute and what it's meant to achieve. And secondly, I think when you look at the fact... When you look at the definition of it in the dictionary, you don't want to use that definition. What definition do you want to use? Do you have one? I would look at the context, if you look at 42 U.S.C. 12101, the findings and the purpose of Title III, and it says under A, subsection 5, it talks about individuals with disabilities who encounter various forms of discrimination, and it specifically says failure to make modifications to existing facilities and practices. It doesn't just say the way you administer a test. It's much broader than that. And when we read the language of Title III and the specific provision about offer, we have to keep in mind that very basic language. And I would also point... What words do you say expands the definition of offer to mean... Failure to make modifications to existing practices. And that does go back to the ABA. It is the ABA that has said that one... The existing practices you're talking about are what? The fact that they deem one test to be valid and reliable. And that motivates the LSAC to continue to use the very test it has been using since the LSAC was developed. Let's don't mistake the facts. The ABA considers the LSAT presumptively valid, but it doesn't require it. There's all kinds of indication in the legal journals now that there are not only other tests that the law schools are using, but some law schools asking to be relieved of the obligation to even give the LSAT. So it's not a completely universal situation. Yes, Your Honor, but respectfully, I would say that although there are some alternatives, in a real practical sense, these are not viable alternatives. Okay, but that's what you need to conceive of. Yes, these are not viable alternatives. Yes, there are some variances that have been allowed. Very few. There has never been any other test that has been presumptively reliable and valid since 1949. It's a presumption. It's not a requirement. Okay, yes, I stand corrected there. It is a presumption of validity. And since 1947, there's never been a test that's had that presumptive validity. And there's a reason for that, because in a practical, real-world sense, neither the LSAC nor these law schools have any other choice but to discriminate against Mr. Binow. And if they had a choice, they would not do it. To your knowledge, has anybody from the State of Michigan contacted the LSAC to discuss the possibility that this business of drawing a picture would be taken out of the test? I can't speak to that, Your Honor, but I will say that in terms of causation, the ABA is the primary motivator here. And this Court has recognized when you have a primary motivator that motivates the conduct of third parties, that is a redressability and causation are met there. So you think the ABA can just call up the head of the LSAC and say take that whole first section out and put something else in? Is that your point? If Standard 503 were deemed to be unlawful, the LSAC most likely would change the content of its test. And the law schools most likely would not require that a blind person take the LSAC. Doesn't it make sense to go to the LSAC first before you start all this litigation and say there's a problem here? They have no incentive to change the test because it is presumptively valid and reliable. Well, they might if they were about to be found liable under the ADA. And respectfully, Your Honor, they might if the test was not valid and reliable. And there's causation and redressability here. Thank you, Your Honors. Isn't this issue pending in the Northern District of California in the case that was submitted on supplemental authority? That's directly against the Law School Admission Council. That consent decree is not directly against this case. First of all, that consent decree had some language about the visually impaired. It used some experts who said that visually impaired could be accommodated by 150% increase in the time frame. It's not applicable because there is absolutely no accommodation that could be given to a completely blind person, such as Mr. Benham. Doesn't that show? I mean, they're saying the proper party should be the Law School Admissions Council in this case in the Northern District of California brought by the Department of Fair Employment and Housing. I mean, there you have the proper parties. You've got the issue. And isn't that more of the alignment that ought to be to resolve this? I believe it's different, Your Honor, especially in that case because an accommodation could be made. The LSAC, perhaps, was not the only proper party but a proper party because it was within the direct control of the LSAT to be able to say we'll give you more time. Here there is no accommodation that can be made for Mr. Benham, and the LSAC has a tremendous risk that if they somehow change the content of the LSAT test for Mr. Benham, they have an enormous risk that it will be no longer considered valid and reliable. That is too big of a risk for the LSAC to take when it doesn't need to and it's not going to. And that does distinguish this case. Thank you, Your Honors. Thank you. Good morning. Good morning. May it please the Court, Anne Rae for the American Bar Association. As the Court noted, Mr. Benham is suing under a federal statute, Title III and Title V of the Americans with Disabilities Act. That statute provides that a party who offers an examination under Title III must do so in an accessible way. The ABA does not offer the law school admission test at all. Their argument to the contrary is that the word offer should be defined in a very broad way to protect the blind and other disabled people under the act, and it's, as they say, a remedial statute for that purpose. And there is no penalty of damages in this statute. That is to say the only relief that can be given, as I understand it, you can correct me if I'm wrong, is equitable relief, which is prospective only. So they're not, ABA wouldn't get punished in damages for retroactively. It might be subject then to injunctive relief. Now, why shouldn't, what's wrong with injunctive relief here that simply says to the ABA, no longer cause or participate in causing a discriminatory test, be sure that you require any tester that you are, who is following your directions in making out a test, does not discriminate against the blind? So that would be the relief granted. What's wrong with that kind of injunction? I think, Your Honor, it goes back to the point that was made earlier, which is the statute here is Title III, and Title III only reaches entities that offer examinations, and I understand that term is not defined, but there is no definition that would encompass the ABA. Your Honor referenced a moment ago to, you know, under the direction of the ABA, we don't direct anything regarding that test. We don't design it. We don't write it. We don't administer it. We don't accommodate it. We have— But you cause it. No, we don't, Your Honor. The test resulted from the action of— a combined set of circumstances, the way the law schools operate with admissions, taken together with the requirement that the ABA makes in respect to testing, the whole ball of wax comes back at least as one proximate cause to the ABA requirement. That's what I mean. And respectfully, Your Honor, I don't agree. We don't have anything to do with that test. You're saying you don't cause anything whatsoever? Correct. We require a valid and reliable test. I see. That's a very narrow definition of a cause. Well, it means—well, I respectfully disagree. Well, is it a valid test if it discriminates against the blind? Validity and reliability, Your Honor, deal with the statistical predictiveness of whether a person who reaches a score on the test can complete the first year of law school. How does that correlate to blind people? Since it's—at least the allegation is it's skewed against them, so therefore it's not reliable, it's not valid as to the blind, but you nevertheless recognize it. And, again, this is a statistical—we don't make it, by the way. It's made by the Law School Admission Council and law schools, who have gotten together, they compare the grades, they compare the test scores, and they figure out is this a statistical predictor of completion of the first year of law school. We don't have anything to do with it. They've done 5,000 validity studies. We weren't involved in them. All we do at the ABA is acknowledge that 5,000 studies are out there that say that statistically, which doesn't include everyone, as Your Honor would understand, the test predicts performance in the first year of law school. We don't endorse it. We don't support it. We simply require a valid and reliable test. There are other tests. Let me ask you this. As I understand the pleadings, there was a time when the ABA allowed individual waivers, which Mr. Benno could have applied for. He could have demonstrated that he was unable to succeed with this test because 25 percent of it put him at a disadvantage. And as I understand it, that has been changed, and now a school can get a waiver of the 503, but there's no individual waiver available anymore. Is that correct? I think, Your Honor, back from the 1970s until the early 90s, after the Americans with Disabilities Act was passed, the ABA standards said if you are physically incapable of taking a valid and reliable test, you could get an individual waiver. And, of course, the teaching of the Americans with Disabilities Act is that the job is to make the test accessible to all, to make everyone available to be able to take a valid and reliable test. And so the standard was changed in recognition of the evolving law about accommodations. On the point about individual versus school, a school has the right for, on an individual basis, to determine how much weight to give that test score, and they can give it no weight at all. But can they give it less weight in the case of a blind applicant than they... Yes, they can give it no weight. What the policies governing the test say, which the ABA supports, is recognize the limitations of this test. If the test is limited as to an individual test taker, the school is supposed to recognize it, give it whatever weight the school deems appropriate or no weight. I don't see why the ABA does not want to say, in its section 503 of the ABA rules here, why are you so reluctant to say, please do not discriminate against the blind? And as a law school, in the type of test that you accept, or if you are a constructor of tests for the law school, the kind of test you construct, just simply say, in there, we don't want you to discriminate. What? That seems perfectly fair to me. Why not say that? And, Your Honor, we say something almost identical to that in Standard 205, which is referenced in our brief. We say law schools shall not discriminate against individuals based on disability. We don't allow them to do that, and to that end, the Standard 503 that Your Honor referenced allows a law school to give no weight to a test score if it doesn't reflect the ability of the individual. If the individual, for example, is blind. If you're already saying that, why do you object to an injunction, equitable relief, future-oriented, that says what you already say? Your Honor, I guess two reasons. Number one, we already are saying, I think, something that is very similar to what Your Honor wants, and the second is, on behalf of the Bar Association, the idea that any time a student has an issue, instead of suing the law school admission counsel, which is the right defendant, instead of suing, perhaps, a law school, if they discriminate in their admission, they come and tell us to rewrite our rules and ask a court to tell us to rewrite our rules, especially one we already are saying. Ask you to write your rules in such a way that you don't discriminate against the blind. And we aren't doing that, Your Honor. We have nothing to do with this test. We let a law school make the determination whether to give it any weight. That's what I want to clear up. This business about giving it no weight at all, it is possible for a law school to say, we're giving the LSAT, and Mr. Benno has showed us that he has difficulty with a certain part of the test, so we're going to grade him on the remainder of that test, or we're going to supply something instead, but we're going to make everybody else take the test, as it is. Yes, Your Honor, absolutely. So that is, in effect, an individual waiver. Exactly. It's the same result, just with a different label. That's what I didn't understand, was that the possibility of getting an individual waiver still exists, but it comes from the law school and not from the ABA. Yes, and even under the old days, the waiver had to come from the law school. It's just called something different under interpretation. Okay. I have a sort of a technical question here. I have been at this so long that I have to confess, I don't remember whether I took the LSAT or not. It is in the mists of history, as far as I can tell. But I don't remember having to draw a picture. What I think, if I took it, I put a number two pencil on a spot, and it was a choose between A, B, C, or D. Is that still the case, and what is this business about drawing a picture? It is still the case, Your Honor. The test is composed entirely of multiple choice questions that are in words, and the answers are you fill in, or use whatever technology, I apologize. I took it a long time ago, too. You fill in the blank for that multiple choice answer. The issue in this case deals with a single section of the test, a portion called the logic section. It's about a quarter of the test, and the instructions say it may be useful to draw a rough diagram, and that's page ID 150 in the record. That's because you really need to visualize a spatial relations problem, or kind of a math problem. Is that right? The allegation is that it's a spatial issue. In many cases, it's a sequencing issue, which is what the question in the record actually shows. And so the California court, which, as the court noted here, has been charged with overseeing a nationwide consent decree against the Law School Admission Council, the party that actually writes this test. The Department of Justice, the California State, a nationwide class of plaintiffs, and five disability experts right now are fixing that testing process to make it nondiscriminatory. And is it specifically, does that cover this logic section? Yes, it does, Your Honor. In our 28-J submission, we attach the opinion just issued in August by that California court. They looked at the logic section. They looked at people with visual impairments. They said, here is an accommodation that we believe, and the implementing regulations require that you best ensure that you are testing the individual's ability. It's a very high standard that that court is applying. The court has imposed a rule or an injunction, so to speak, and what is the, what's to be done exactly with respect to what he's complaining about? So an applicant like Mr. Benno taking the test, instead of the 35 minutes that is provided to other test takers, would now get almost 90 minutes. And if he believes that is not a sufficient accommodation for him, he can go to the LSAC, the Law School Admission Council. He can go to the court and seek a further accommodation. Five disability experts determined that that was a reasonable, not just reasonable, but the accommodation that would best ensure. Mr. Benno says there is no accommodation. He could take four years, he says, and still not be able to answer those questions. But there is an accommodation. Ms. Gray, those questions, I saw them. They were scary. I think they're scary to all of us these days, Your Honor. Oh, scary. But the point that the court made is that there is an accommodation, even if you take everything he says as true, why couldn't the Law School Admission Council reformulate those questions so they don't require spatial reasoning? Why couldn't they enter an order that says he only has to take three-quarters of the test, the part that he admits is not discriminatory? The position, the only way Mr. Benno can come at the ABA is to say he has a right to take no test at all. But the Americans with Disabilities Act, Title III, does not give you a right to take no test at all. It gives you a right to take an accessible test. And the only place that the test can be made accessible is what that court in California is doing right now. We can't change the test. We can't make it accessible. And we certainly aren't interfering under Title V. As Your Honor noted, animus is required under the identically worded Fair Housing Act provision, and I just heard counsel concede that animus is required. We don't have animus. Animus is a specific intent to discriminate. We would have had to adopt that standard for the purpose of hurting blind people. We obviously didn't do that. What you're saying is you don't want to have to make out the test. You want this council to make, with the help perhaps of the law schools and some input there, you want them to make out the test, one that will not discriminate against the blind. That's what you're saying basically. I'm saying they have to because we don't control any aspect of that. We could talk till the cows come home, and they would still put out whatever test they think is right. These folks have sued the wrong party, and there's a proceeding in California right now. They don't even have to file a new lawsuit to get relief. It is available. It is being implemented now. We can't do anything. We certainly haven't interfered. He has no right under Title III to take no test at all, and we haven't interfered under Title V because we haven't interfered with his ability to obtain that accommodation in the proceeding in California or otherwise. We just have a standard that says take a valid and reliable test and let schools weigh it as much or as little or not at all if they want. We simply aren't the right defendant here. There is no standing, and independently because we don't offer and we haven't interfered. You can't get the job done. You've got to go somewhere else to get the job done. We absolutely cannot get the job done, and he hasn't stated a claim under Title III or Title V. If there are no further questions, Your Honors. Anything further? Rebuttal, Mr. Turkish. Two minutes. Just a brief rebuttal, Your Honor. May it again please the Court. I understand why it's advantageous to downplay your role in forcing this examination to win a lawsuit, but it's simply not the truth. The American Bar Association could have taken notice of that action in the state of California. That also involved the United States Department of Justice. Since it was the third time the United States Department of Justice has had to take action against the Law School Admission Council, and during all of this time, case after case, this organization continues to deem it the sole valid and reliable test. They offer no space for something else. Your Honors, it wasn't until... Wait, now that's not true, the sole. There are some schools that have gotten waivers to use another test, so let's don't overstate this. Your Honor, and I want to be careful not to overstate it, and if I could respectfully say, I don't believe that's completely fair. In our 20HA submission, we noted that the Legal Education Committee within the ABA has just done away with the very use of other examinations, of the GMAT, of the SAT, of the ACT. Now, counsel comes back and says in their 20HA response that, well, that's subject to final approval by the House of Delegates, but it's the Legal Education Committee that's recognized by the Department of Education as having this authority. So, yes, there are other tests, but yet there are none that they like quite as much as the LSAT, because that's the one that they routinely call valid and reliable. Your Honor, counsel says there's no definition of offer that encompasses the ABA's conduct. Of course there is. It's the common sense definition of offer. To accept their definition of offer, you'd be saying that, for instance, a prospective employer could say to an applicant, we're going to force you to take a discriminatory examination, and even though you may believe it's discriminatory, you can't sue us for it because we're going to send you down the block to somebody else to take that examination. We're just going to require it, but we're going to contract our way around liability. That does not speak to the remedial intent of the ADA, Your Honors. Title V makes it illegal to interfere. In their brief, they say interfere. The problem is if the Congress had wanted it to be so broad as you are saying, the use of the word offer, which does not normally mean what you're suggesting, it has a much more narrow meaning, the Congress of the United States should have defined it in some way that indicates that it should be very, very broadly defined. That's the problem. We've got this word, and it's the standard that we have to go by, and it's offer. The ADA is not offering this test under the normal way of defining the word offer, it seems to me. I mean, I'm sympathetic with what you're trying to do. I hope they will enforce, require, as best they can, nondiscrimination, but when it comes down to what the statutory tort is, you've got a problem with this word. May I respond? Yes, Your Honor. Your Honor, the congressional intent behind that word was clearly recognized by the drafters of the implementing regulation that talked about an entity that selects the examination. Actions by the Department of Justice, decades of lack of accommodation on the LSAT, and yet they still select it as the only test that's presumptively valid and reliable, and they continue to, with a big stick, bat away any other examination. For decades, people who were blind sought refuge in the ABA's rules that they not be forced to draw pictures, and it's only an action against the ABA that can prevent Mr. Binnow from being blocked to the entrance of his chosen profession. Thank you. Thank you, Your Honors.